UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THELMA DANIEL,

                    Plaintiff,                              No. 13-cv-13200

vs.                                                        Hon. Gerald E. Rosen

CHUCK HAGEL,
Secretary of Defense,

                    Defendant.

_____/

OPINION AND ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on May 07, 2014

PRESENT:Honorable Gerald E. Rosen
United States District Chief Judge

## I. INTRODUCTION

    This is an employment discrimination action brought by Thelma Daniel, a dual-

status-military technician in the Michigan Air National Guard ("MIANG"), against

United States Secretary of Defense Chuck Hagel.  In her Complaint Daniel alleges that

she was denied a promotion because of her gender and race, in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

    Plaintiff first pursued her discrimination claim by filing an EEO complaint that

was handled internally within the Department of Defense, then by requesting a hearing

1

before an EEOC Administrative Judge.  The AJ determined that Daniel had been the victim of race and sex discrimination, and, accordingly, entered an order awarding her, among other relief, damages which included both civilian and military back pay.  The Department of Defense, however, maintained that the EEOC and the AJ lacked jurisdiction to order any relief, and, therefore, refused to comply with the order.  Daniel, therefore, appealed  to the EEOC Office of Federal Operations ("OFO") for enforcement of the AJ's order.  Although the OFO agreed with Defendant that the AJ could not force the DOD to provide Daniel with military back pay, the OFO upheld the relief ordered by the AJ arising from Daniel's civilian capacity.  Defendant refused to comply and this lawsuit ensued.

In lieu of an Answer, Defendant filed the instant Motion to Dismiss Plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Plaintiff has responded and Defendant has replied.

Having reviewed and considered Defendant's Motion, the briefs filed by the parties in support of, and in opposition to, the motion, and the exhibits accompanying those briefs, the Court has determined that the relevant allegations, facts and legal arguments are adequately presented in these submissions, and that oral argument would not aid the decisional process.  Therefore, the Court will decide this matter "on the briefs."  *See* Eastern District of Michigan Local Rule 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Thelma Daniel is an African-American woman who has served in the Michigan Air National Guard at Selfridge Air National Guard Base as a dual-status military technician since 1989.  In 2002, when the events giving rise to this action occurred, Daniel held the position of Flight Service Specialist, GS-09, and was assigned to Aviation Resource Management.  Daniel also held the Air Force military rank of Master Sergeant, with a military pay grade of Enlisted 7 ("E-7 ").  *See Daniel v. McHugh*, 2012 WL 5178370 at *1 (EEOC 2012).[1]

In September 2002, the MIANG posted a dual-status military technician vacancy announcement for a Flight Service Manager ("FSM"), a position that came with a higher military grade than Daniel held at the time.  The vacancy announcement for the FSM position stated that the purpose of the position was "to manage, direct and oversee the operation of all airfield activities and facilities under the jurisdiction of the air base, and to coordinate as necessary with all applicable agencies, base flying activities and transient military aircrews and aircraft, as well as civilian aircraft utilizing Air National Guard

---

[1] The Court may take judicial notice of the proceedings in other courts and agencies of record. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.1980), *cert. denied*, 449 U.S. 996 (1980); *see also Landt v. Farley*, 2012 WL 4473209, at *1 (N.D. Ohio Sept.26, 2012) (noting that the "court may take judicial notice of matters of public record, including duly recorded documents, and court records available to the public through the PACER system and via the internet." (quotation marks and citation omitted)); *Kitty Hawk Aircargo, Inc. v. Chao,* 418 F.3d 453, 457 & n.9 (5th Cir. 2005) (taking judicial notice of a federal agency action that was "published in the official administrative agency reporter [and] is available on the agency's website and on Lexis and Westlaw").

(ANG) facilities." *See* Defendant's Ex. 2, p. 8.  The announcement also listed the

following knowledge, skills and abilities as essential for successful performance of the

position:

1.      Knowledge of performance characteristics, capabilities and limitations of unit aircraft; USAF and federal flying regulations; communications procedures; and other air operations is required to enable the incumbent to make appropriate decisions related to management of the ANG owned/operated/controlled, ramp, taxiway and airfield facilities.

2.      Knowledge of maintenance and safety issues as they relate to airfield management.

3.      Ability to review work projects and ensure[] that they are in compliance with existing safety standards, FAA guidelines and Air Force/ANG instructions.

4.      Ability and knowledge to develop, administer, and monitor the flight line drivers program.

5.      Ability to direct the work of others.

*Id.*

Daniel applied for the position; however, she was not selected.  The five-member

military selecting panel, headed by Colonel [now Brigadier General] Richard Eliot,

selected another candidate, Master Sergeant Aaron Doty, a white male, to be promoted to

the Flight Service Manager position.

Dissatisfied with the selection panel's decision, Daniel filed an EEO complaint

with the Department of Defense on February 12, 2003.  The complaint was investigated

internally by the DOD's Atlanta Office of Complaints Investigation ("OCI") and a report

4

was issued.  *See* Defendant's Ex. 2.  The OCI concluded that while the evidence did not

support the selection of Master Sergeant Doty as the "absolute best-qualified candidate

for the position," it found that MIANG management's promotion decision was

"consistent and reflect[ed] legitimate nondiscriminatory reasons for [Daniel's] non-

selection."  *Id.* at pp. 10-11.

Daniel thereafter pursued her discrimination claim by requesting a hearing before

an EEOC Administrative Judge.  In a June 2007 decision, the AJ found that Daniel had

proven that the MIANG discriminated against her and did not select her for the Flight

Service Manager position because of her race and sex.  *See Daniel v. McHugh*, 2012 WL

5178370 at *1.  As relief, the AJ ordered the MIANG to (1) pay Daniel $25,000 in non-

pecuniary compensatory damages; (2) provide EEO training for MIANG officials; (3)

promote Daniel from a GS-9 to GS-11 dual-status military technician, with back pay; (4)

and promote Daniel to the rank of Senior Master Sergeant E-8 and pay her military back

pay commensurate with the new rank.

Although the Defendant maintained that the EEOC and the AJ lacked jurisdiction

to order any relief, in an attempt to resolve the matter, the MIANG took some of the

measures ordered by the AJ -- Daniel was promoted to a GS-11 Flight Services Manager

position with an effective date of September 2, 2002, and to the military rank of Senior

Master Sergeant.  She also was paid $25,000 for compensatory damages and $30,169.02

for civilian back pay.  Additionally, the MIANG provided EEO training to its officials.

However, it did not pay Daniel any military back pay.

In July 2008, Daniel appealed the AJ's decision to the EEOC Office of Federal Operations, on the grounds that the MIANG had failed to comply with the AJ's decision and specifically taking issue with Defendant's failure to comply with the EEOC's order that MIANG pay her military back pay. *Id.* at *1-2.  In response, MIANG argued that the EEOC did not have jurisdiction to order relief that is "irreducibly military in nature," and, therefore, Daniel's complaint should be dismissed for failure to state a claim upon which relief can be granted.  *Id.* at *2.

In October 2012, the OFO held that some of the relief ordered by the AJ was irreducibly military in nature "and therefore beyond the jurisdictional boundaries of the [EEOC] to enforce."  *Id.* at *2-3.  Specifically, the OFO found that the AJ could not direct the MIANG to promote Daniel to a higher military rank or force the MIANG to provide Daniel with military back pay.  *Id.*  However, the OFO found that it could enforce the portion of the AJ's order arising from Daniel's civilian capacity.  *Id.*  Thus, it ordered the MIANG to provide Daniel with all "dual status civilian back pay information" [requested by Plaintiff to demonstrate how MIANG had calculated the amount of civilian back pay that she was entitled to] and required the MIANG to "consider taking appropriate disciplinary action against the responsible management officials for the underlying discrimination" and "report its decision to the EEOC

compliance officer." *Id.*[2]

On July 25, 2013, Daniel filed the instant lawsuit seeking redress because the Department of Defense and its subordinate agencies failed to comply with the EEOC's orders. As relief, Daniel seeks (1) declaratory or injunctive relief, including an order preventing the DOD from disregarding appropriate processing of EEO complaints in the future; (2) an order requiring the DOD to comply with the current EEOC order concerning her complaint; (3) sanctions against the DOD to deter future non-compliance; (4) damages in the amount of $300,000 for the underlying discrimination against her; and (5) attorneys' fees and costs. *See* Amended Complaint, Dkt. #4, p. 12.

Defendant now seeks dismissal of Plaintiff's Amended Complaint contending that this Court lacks subject matter jurisdiction over Plaintiff's claims.

## III.   DISCUSSION

A.   APPLICABLE STANDARDS

As indicated above, Defendant's Motion to Dismiss presents a question concerning the Court's subject matter jurisdiction. There are two categories of motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) -- facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the court's subject matter jurisdiction based upon the sufficiency

---

[2]   The OFO later issued a "Decision on a Petition for Clarification," stating that the MIANG must also provide Daniel with information on how it calculated the interest it paid to Daniel on her civilian back pay award. *See Daniel v. McHugh* 2013 WL 1856784 at *1 (EEOC 2013).

of the pleadings.  In considering a "facial attack," a court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party.  *Id.*; *Cooley v. United States*, 791 F. Supp. 1294 (E.D. Tenn. 1992); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

By contrast, where, as here, subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125,, 1134 (6th Cir.1996)  In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*.

Further, in a Rule 12(b)(1) motion that factually attacks the plaintiff's assertion of subject matter jurisdiction, if the facts are in dispute, the court can exercise wide discretion to consider affidavits and documents outside the complaint, and can even conduct a limited evidentiary hearing, if warranted.  *Id*.  Consideration of matters outside the pleadings, however, does not convert the Rule 12(b)(1) motion into a Rule 56 motion, as it would under a Rule 12(b)(6) motion.  *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 195-16 (6th Cir.1986).

B.      PLAINTIFF'S TITLE VII CLAIMS ARE NOT JUSTICIABLE

8

§ 2000e–16(a) of Title VII provides that "[a]ll personnel actions affecting employees or applicants for employment ... in military departments as defined in section 102 of Title 5 ... shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a). Title VII thus waives federal sovereign immunity for military departments. See 29 C.F.R. § 1614.103(b)(1).  However, in accord with the *Feres* doctrine discussed below, the Equal Employment Opportunity Commission and the vast majority of circuit courts to interpret this statute have held that it "appl[ies] only to suits by civilian employees of the military departments, and not members of the armed forces." *Fisher v. Peters*, 249 F.3d 433, 438 (6th Cir.2001); *see also* 29.C.F.R. § 1614.103(d) ("This part does not apply to uniformed members of the military departments referred to in paragraph (b)(1) of this section."). Thus, the justiciability of this case turns on whether a *dual-status* military technician such as Plaintiff Daniel may bring suit under Title VII.

It has long been established that United States military personnel may not bring actions based on injuries suffered incident to their service in the armed forces.  *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950)).  *Feres* involved the consolidated actions of three active members of the military brought under the Federal Tort Claims Act and alleging negligence on the part of other service members in the plaintiffs' respective military branches.  Because of the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline,

9

and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty," the Court held that the FTCA excluded claims of that character. *United States v. Brown*, 348 U.S. 110, 112, 74 S.Ct. 141, 143 (1954) (citing *Feres*, 340 U.S. at 141-143, 71 S.Ct. 156-157).

This rule -- the " *Feres* doctrine" (also known as the "intra-military immunity doctrine") -- is "premised on the disruptive nature of judicial second-guessing of military decisions." *Walch v. Adjutant Gen'ls Dept. of Tex.*, 533 F.3d 289, 296 (5th Cir.2008) (citing *Brown*, 348 U.S. at 112). Although *Feres* arose in the context of the Federal Tort Claims Act, the Supreme Court subsequently extended it to bar *Bivens* suits by soldiers against their superiors for violation of constitutional rights. *See Chappell v. Wallace*, 462 U.S. 296, 305, 103 S.Ct. 2362 (1983). The courts of appeals have further extended *Feres* to encompass § 1983 claims, *see Crawford v. Tex. Army Nat'l Guard*, 794 F.2d 1034, 1035–36 (5th Cir.1986), and Title VII claims brought by service members that are incident to military service. *See e.g., Overton v. N.Y. State Div. of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004); *Brown v. United States*, 227 F.2d 295, 299 (5th Cir. 2000); *Hupp v. U.S. Dep't of the Army*, 144 F.3d 1144, 1147 (8th Cir. 1998); *Mier v. Owens*, 57 F.3d 747, 749-50 (9th Cir. 1995); *Doe v. Garrett*, 903 F.2d 1455, 1461-62 (11th Cir. 1990).

The *Feres* doctrine also generally applies to members of the National Guard. *See*

10

*Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 66, 667 n.1, 673-74, 97 S.Ct. 2054

(1977) (applying *Feres* to block a third-party indemnity claim against the United States

over the death of a National Guard officer); *see also Coffman v. State of Michigan*, 120

F.3d 57, 58-59 (6th Cir. 1997);(holding National Guardsman's ADA and Rehabilitation

Act claims non-justiciable); *Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir. 1981)

(barring National Guard members claim that she was demoted due to racial

discrimination); *Stinson v. Hornsby*, 827 F.2d 1537, 1541 (11th Cir. 1987) (baring

National Guard member's claim that his discharge was due to racial discrimination).

The Sixth Circuit has also held that the "hybrid" National Guard "dual-status

technician" position is one that is "irreducibly military in nature," and thus, Title VII

claims brought by such dual-status technicians are likewise precluded. *Leistiko v. Stone*,

134 F.3d 817, 820-21 (6th Cir. 1998).

The plaintiff in *Leistiko* was a dual-status technician serving as a Supervisory

Aircraft Pilot in the Ohio National Guard who suffered a seizure during a helicopter

flight resulting in medical disqualification from further aviation service, which

consequently mandated his discharge. He subsequently brought suit alleging that by

discharging him, the Secretary of the Army violated the Rehabilitation Act of 1973.

Noting that "every court having occasion closely to consider the capacity of National

Guard [dual-status] technicians has determined that capacity to be irreducibly military in

nature," the court held that Colonel Leistiko's claim was non-justiciable. 134 F.3d at

11

821.

Not long after *Leistiko*, the Sixth Circuit held that a National Guard dual-status technician's Title VII discrimination claim was non-justiciable because technician positions are "irreducibly military in nature." *Fischer v. Peters*, 249 F.3d 433, 443 (6th Cir. 2001). In *Fisher*, the plaintiff was denied promotion on three different occasions while holding a dual civilian/military position with the Tennessee Air National Guard. *Id.* at 434-36. Following each promotion denial, Fisher filed administrative complaints with the Equal Employment Opportunity Office alleging gender discrimination. *Id.* at 436. Thereafter, as instructed by the Director of the EEO Office, Fisher filed suit against the acting Secretary of the Air Force, alleging violations of Title VII. *Id.* at 437. The court rejected Fisher's argument that her discrimination claim was only related to her civilian position and not her weekend military service. *Id.* at 443. Following the rationale of *Leistiko*, the court held that National Guard dual-status technicians' claims were non-justiciable and could only be pursued through military channels because such technician positions are "irreducibly military in nature." *Id.* Unpersuaded by the plaintiff's attempt to distinguish the civilian nature of her duties, the court went as far as noting that "the National Guard as a whole is irreducibly military." *Id.* at 440.

The Sixth Circuit has adhered to this "bright line" rule and has continued to consistently hold that, because dual-status National Guard positions are "irreducibly military in nature," discrimination claims brought by such technicians are non-justiciable.

12

*See e.g., Weaver v. Tennessee National Guard*, 30 F. App'x 554 (6th Cir. 2002) (Title VII claim barred); *Brown v. Roche*, 206 F. App'x 430, 432 (6th Cir. 2006) (affirming Rule 12(b)(1) dismissal of plaintiff's ADEA claim); *see also Bowers v. Wynne*, 615 F.3d 455, 457 (6th Cir. 2010) (holding Title VII and Rehabilitation claims brought by a dual-status Air Reserve Technician barred).

In *Bowers*, the district court determined that the Sixth Circuit's decision in *Fisher* was controlling since it found no material distinction between a dual-status Air Reserve Technician ("ART") and a dual-status National Guard Technician, and therefore, granted the defendant's motion to dismiss for lack of subject matter jurisdiction. *Id.* On appeal, the Sixth Circuit rejected the plaintiff's arguments trying to distinguish an ART from an National Guard technician on the basis that the two positions are governed by different statutes and, unlike National Guard technicians, ARTs are not statutorily required to wear military uniforms. *Id.* at 460. The appellate court determined that an ART position is not materially different from that of a National Guard technician, noting that, because Air Reserve Technician positions, like National Guard Technician positions "are encompassed within a military organization and require the performance of work directly related to national defense, such positions are themselves military in nature." *Id.* at 459 (quoting *Wright v. Park*, 5 F.3d 586, 588-9 (1st Cir. 1993)). Therefore, the court held that, under the precedents in *Fisher* and *Leistiko*, remedies pursued by the

ART under Title VII or the Rehabilitation Act were not available. *Id.* at 468.[3]

---

[3] Other circuits have declined to take the Sixth Circuit's bright-line approach and instead have adopted various more fact-specific tests for determining whether or not employment actions brought by dual-status technicians are justiciable. For example, the Ninth Circuit looks to whether the challenged personnel action is "integrally related to the military's unique structure." *See, e.g., Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1998). *Mier,* like the instant case, involved a dual-status technician's discrimination claim predicated upon claims that he had been discriminatorily denied promotions and suspended from civilian employment as a result of the denial of the requisite military promotions on account of race, color and national origin in violation of Title VII. Applying the "integrally related to the military's structure" test, the Ninth Circuit determined that Mier's Title VII claims were non-justiciable. The court explained,

> Military promotion is one of the most obvious examples of a personnel action that is integrally related to the military's structure. Decisions regarding who is promoted and why are central to maintenance of the military's hierarch. Title VII does not allow the court to review decisions regarding the military promotion of individuals serving as Guard technicians. Because [plaintiff's] suspension from civilian promotion resulted from denial of the military promotion, the suspension likewise cannot be reviewed.

57 F.3d at 751.

In the First, Second, Third and Fifth Circuits, only claims "arising purely" from the technician's civilian status may be brought. *See e.g., Brown v. United States*, 227 F.3d 295, 299 (5th Cir. 2000). If the claim is difficult to characterize, like the Ninth Circuit, these courts consider whether the conduct at issue is "integrally related to the military's unique structure." *Id.* at 299 n. 2; *see also Overton v. N.Y, State Div. of Military and Naval Affairs*, 373 F.3d 83, 954 (2d Cir. 2004); *Willis v. Roche*, 256 F. App'x 534, 537 (3d Cir. 2007).

In the Eighth Circuit, justiciability of claims challenging the merits of internal National Guard personnel decisions turns on whether the challenged decision "involves an assessment of a technician's military qualifications." *See e.g., Hupp v. Department of the Army*, 144 F.3d 1144, 1148 (8th Cir. 1998). This test is satisfied, and a failure to hire or promote claim, accordingly is not justiciable, where the hiring process includes consideration of both civilian and military qualifications. *Id.* For this reason, the Federal Circuit has found that courts cannot consider "matters that relate to enlistment, transfer,

14

It is against this backdrop of Sixth Circuit's manifested judicial restraint concerning military matters that Plaintiff Daniel's claim and Defendant's motion to dismiss must be considered. Whether Plaintiff's Title VII claim is justiciable is dispositive in considering Defendant's motion to dismiss for lack of subject matter jurisdiction.

Plaintiff makes no attempt to rebut the seemingly straightforward application of the Sixth Circuit's holding in *Fisher* to the present case.  Instead, Plaintiff argues that the *Feres* doctrine should be found to be inapplicable because she claims that her Title VII claim "does not involve military decision-making but instead involves the military's contravention of its own [EEO] regulations and procedures." [Resp. Br., p. 9]  Therefore, Plaintiff argues that at least that portion of her claim which seeks injunctive and declaratory relief to compel Defendant to comply with the EEOC orders is justiciable. However, as Defendant notes, Plaintiff can have no right to injunctive or declaratory relief if she has no viable underlying substantive cause of action.  *See Heussner v. National Gypsum Co.*, 887 F.2d 672, 677 n. 3 (6th Cir. 1989) (holding that where all substantive claims are properly dismissed there is no basis for injunctive relief); *Goryoka v. Quicken Loans, Inc.*, 519 F. App'x 926, 928 (6th Cir. 2013).  And, as indicated, Plaintiff offers no argument to rebut the readily apparent non-justiciability of her

---

promotion, suspension and discharge or that otherwise involve the military 'hierarchy.' " *Id*.  *Jentoft v.United States*, 450 F.3d 1342, 1345 (Fed. Cir. 2006).

substantive Title VII claims of race and gender discrimination in light of *Fisher* and its progeny.

Moreover, Plaintiff ignores the fact that the courts have, in fact, held that the *Feres* doctrine bars claims for injunctive relief where, as here, the plaintiff seeks to enjoin the putatively unlawful personnel decisions made by superior officers and the Secretary of Defense. *See e.g., Watson v. Arkansas Nat. Guard*, 886 F.2d 1004, 1009 (8th Cir. 1989).

Like Plaintiff Daniel, the plaintiff in *Watson* argued that even if a claim for damages would be barred under the *Feres* doctrine, his claim for injunctive relief should survive. The Eighth Circuit rejected Watson's argument, explaining:

> Based upon a searching consideration of the policies underlying *Feres* and *Chappell*, we are unable to conclude that military discipline will be any less affected by a suit for injunctive relief than by a claim for damages. The judiciary does not acquire competence in this area merely because the remedy sought is an injunction rather than damages. The military concerns found compelling in *Feres* and *Chappell* are equally present here. . . **To disallow claims for damages while agreeing to review claims for injunctive relief arising from the same facts would be to exalt form over substance.**

*Id.* (emphasis added). *See also Crawford v. Texas Army Nat. Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986) (affirming district court's dismissal of all of plaintiff's claims -- including his claim for injunctive relief -- on the basis of non-justiciability explaining that none of the cases that have allowed claims of military personnel seeking injunctive relief to proceed involved direct interference with military personnel decisions: "The common characteristic of these decisions is that they involve challenges to the facial validity of

16

military regulations and were not tied to discrete personnel matters." *Id.*); *Bork v. Carroll*, 449 F. App'x 719, 720 (10th Cir. 2011).

Furthermore, in support of her argument, Plaintiff relies entirely upon non-binding, out-of-circuit decisions which entirely fail to address the Sixth Court's holding in *Fisher*.

The Court first notes that Plaintiff's entire argument that the reasoning of the courts in extending *Feres* to prohibit Title VII cases "becomes a fiction [in this case] because it does not involve discretionary military decision-making but instead involves the military's contravention of its own regulation and procedures," and the entire block of authorities cited at page 9 of her Response Brief in support of this argument, is lifted *verbatim* from a *concurring opinion* in a Ninth Circuit decision, *United States v. Ritchie*, 733 F.3d 871,880 (9th Cir. 2013), a case which did not even involve a request for injunctive relief.  Indeed, the court in *Ritchie affirmed* the district court's dismissal of that FTCA wrongful death case based on *Feres* and well-settled Ninth Circuit precedent applying that doctrine.  The concurring judge wrote separately "because [he] wish[ed] to highlight how th[e] case reveals the questionable validity of the *Feres* doctrine," and in that vein, noted that courts have recognized an exception to the application of the *Feres* doctrine, in certain cases not seeking monetary relief.

The cases cited by the *Ritchie* concurrence and by Plaintiff include the Second Circuit opinion in *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45

(2d Cir. 1999), which cites other Second Circuit decisions expressing the view that "to the extent a military regulation is mandatory, the courts will see that it is observed." [*See* Pl. Resp. at 9].  However, Plaintiff fails to note that *Jones* did not involve the issue of justiciability of a claim for injunctive relief; no federal defendant was named and the plaintiff's motion for leave to amend his complaint to add a claim for injunctive relief was denied on grounds of futility based on the plaintiff's failure to exhaust available internal administrative remedies, not because such a claim would be non-justiciable. *See Jones*, 166 F.3d at 53.

*Murphy v. United States*, 993 F.2d 871 (Fed. Cir. 1993), similarly does not support Plaintiff's position as in that case, the Federal Circuit actually held that the plaintiff's claim for injunctive relief to compel the military to permit him to reenlist was "beyond judicial reach."  *Id.* at 874. The Ninth Circuit's decisions in *Watkins v. U.S. Army*, 875 F.2d 699, 705-711 (9th Cir. 1989), *Bledsoe v. Webb*, 739 F.2d 1357, 1360 (9th Cir. 1988), and *Wilkins v. United States*, 279 F.3d 782, 784 (9th Cir. 2002), likewise fail to support her claim.

In *Watkins*, the court approved the application of equitable estoppel to bar the Army from denying the plaintiff's reenlistment on the basis of his homosexuality because it had known about the plaintiff's sexual orientation for 14 years and made no attempt to enforce its anti-homosexuality policy at any time during that period.  In *Bledsoe*, while the court stated that, on occasion, it had permitted claims against the military to go

18

forward and, as quoted by Plaintiff stated, "Indeed, courts often review cases in which military officials are alleged to have violated their own regulations," that assertion had no bearing on the court's decision "since the plaintiff [wa]s not a member of the 'military services' and since no policy or function [wa]s implicated which [wa]s unmistakably military in nature." *Bledsoe*, 839 F.2d at 1360.  Finally, while *Wilkins* did apply the exception to the *Feres* bar, and allow the plaintiff to proceed with his claim for injunctive relief, that case demonstrates why the exception has no application here.  In *Wilkins* the plaintiff challenged the constitutionality of U.S. Navy's policy and regulations governing the Navy Chaplain Corps.  As it was the policy and the implementing regulations themselves that the plaintiff was challenging the court held that the action was not barred by *Feres*.

By contrast, here Plaintiff does not challenge any regulation or policy.  Rather, she simply challenges Defendant's refusal to comply with the EEOC's order granting her relief.  That order, however, addresses a "mere personal action" and provides merely injunctive relief that is "collateral to. . . a money judgment."  *Wilkins*, 279 F.3d at 786-87 (explaining the distinction between non-monetary claims subject to the *Feres* doctrine from the "[b]road-based declaratory and injunctive relief regarding Navy policies affecting the structure of the military chaplaincy" challenged by Wilkins); *see also Watson v. Arkansas Nat. Guard*, 886 F.2d at 1008-1010; *Crawford v. Texas Army Nat. Guard*, 794 F.2d at 1036 (cases for non-monetary relief are allowed to proceed when

19

"they involve challenges to the facial validity of military regulations and [are] not tied to discrete personnel matters.")  As the EEOC's order here was tied to one discrete personnel matter and was collateral to monetary relief, like Plaintiff's claim for damages, Plaintiff's claim for injunctive relief is non-justiciable.

In sum, the straightforward application of *Feres* and the Sixth Circuit's decision in *Fisher* compels the conclusion that Plaintiff Daniel's Title VII claims for both monetary and non-monetary relief are non-justiciable.  Plaintiff does not dispute her status as a dual-status technician in the National Guard, a position held by the Sixth Circuit to be "irreducibly military in nature."  Therefore, under controlling precedent, Plaintiff's claims are not justiciable.  Plaintiff has failed to meet her burden of proof to establish that jurisdiction over her claim exists.[4]

---

[4]  Even if the Court were to apply one of the more fact-specific tests used in other circuits rather than the Sixth Circuit's bright-line rule, the Court would nonetheless conclude that Plaintiff's claims are non-justiciable because Plaintiff is challenging her denial of a military promotion, and "military promotion is one of the most obvious examples of a personnel action that is 'integrally related to the military's structure.'" *Mier v. Owens*, 57 F.3d at 751.  Furthermore, the merits of the decision to promote Master Sergeant Doty instead of Plaintiff "involve an assessment of [the candidates'] military qualifications." *Hupp v. Dep't of Army*, 144 F.3d at 1148.  Hence, applying tests used in other circuits, Plaintiff's claims are non-justiciable.

20

<u>CONCLUSION</u>

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's motion to dismiss for lack of subject

matter jurisdiction **[Dkt. # 8]** is GRANTED.  Accordingly,

IT IS FURTHER ORDERED that Plaintiff's claims against Defendant are

DISMISSED, in their entirety, with prejudice.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  May 7, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on May 7, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

21